## MYCO INDUSTRIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7170-91.　　　Filed March 12, 1992.

*Karl Norman Clifford* and *Stephen J. Stone,* for petitioner.
*Martin M. Van Brauman,* for respondent.

### OPINION

BEGHE, *Judge:* This opinion addresses respondent's motion under Rule 142(e)[1] to allocate the burden of proof on the reasonableness of petitioner's alleged business need⌒ for accumulated earnings tax purposes.

Petitioner is a corporation that has its principal place of business in Artesia, New Mexico, the same location it had at the time it filed its petition. Respondent determined that petitioner is liable for the accumulated earnings tax imposed by section 531 for the taxable years ended April 30, 1983, and 1984, in the amounts of $1,435,692 and $1,713,914, respectively. Petitioner contends that its reasonable business needs exceeded its accumulated earnings, and that therefore it does not owe any accumulated earnings tax.

The reasonableness of petitioner's claimed business needs will be the primary issue in any trial of the merits of this case. If those needs exceed accumulated taxable income (after adjustments under section 535(b)), petitioner will owe no tax; if they do not, petitioner nonetheless will be able to reduce its accumulated taxable income by the amount of reasonable accumulations. Sec. 535(a), (c).

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code as in effect for the taxable years in issue.

Contrary to ordinary Tax Court practice under Rule 142(a), respondent may have the burden of proof on the issue of the reasonableness of the accumulations if either of two conditions is satisfied, sec. 534(a): First, if respondent fails to issue a "notification" to the corporation, prior to the issuance of any notice of deficiency, that respondent proposes to issue a deficiency based upon the accumulated earnings tax, sec. 534(b); and second, if the corporation files with respondent a timely statement "of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies" to establish that the accumulations were for reasonable business needs, sec. 534(c).

Petitioner, presenting an issue of first impression, first asserts that respondent's section 534(b) notification (534(b) notification) was deficient, and that therefore respondent should have the burden of proof on the reasonableness of petitioner's accumulations. Because we agree with petitioner on this issue, we need not address the sufficiency of petitioner's timely statement under section 534(c) of the grounds and facts on which it relies to show that its accumulations were for reasonable business needs.

Respondent's initial 534(b) notification did not state the years to which the proposed notice of deficiency would pertain. The 534(b) notification, sent by certified mail from respondent's Appeals Office in Austin, Texas, on March 28, 1991, states: "We propose to issue you a Notice of Deficiency for the above tax years for the tax that section 531 of the Internal Revenue Code requires be paid on accumulated earnings." However, there are no "above tax years" referred to anywhere in the notification.

On April 5, 1991, respondent sent petitioner a notice of deficiency by certified mail. The notice of deficiency clearly states that respondent was determining an accumulated earnings tax deficiency for petitioner's taxable years ended April 30, 1983, and 1984.

On April 8, 1991, petitioner's attorney wrote to the Appeals Office contact identified on the 534(b) notification, Richard J. Sigler, asking him to clarify which tax years were covered by the 534(b) notification. Petitioner's attorney's letter noted that respondent was reviewing several of petitioner's tax years, but made no reference to the notice of deficiency.

On April 16, 1991, Sigler sent a letter to petitioner's attorney, apparently by regular mail, stating that the 534(b) notification pertained to the taxable years ended April 30, 1983, and 1984. Sigler's letter stated that petitioner should have known which years were covered by the 534(b) notification because those were the only 2 years before the Appeals Office at the time the notification was sent. Sigler also noted that with respect to those years petitioner had executed a Form 872-T, which terminates a Form 872-A special consent to extend the statutory period of limitations within which respondent may issue a notice of deficiency.

On April 19, 1991, petitioner's attorney replied that respondent had begun an audit of petitioner's 1989 and 1990 tax years on March 19, 1991, prior to the issuance of the 534(b) notification. Petitioner's attorney wrote that he had advised his client not to cooperate with the revenue agent conducting the 1989 and 1990 examination, believing cooperation would be futile. Petitioner's attorney stated that he was justifiably confused about which tax years were covered by the 534(b) notification, inasmuch as it could have pertained to the 1989 and 1990 tax years. The implication of petitioner's attorney's letter is that he believed respondent was attempting to improve his bargaining position in the 1989 and 1990 examination by threatening to determine accumulated earnings tax deficiencies for those years. Petitioner's attorney also noted that 7 years were open to review by respondent. Petitioner's attorney requested revocation of the March 28, 1991, notification as insufficient.

In a letter of April 23, 1991, Sigler told petitioner's attorney that the 534(b) notification was sufficient and would not be revoked. "The fact that, because of the statute of limitations, the notice of deficiency has to be issued before the taxpayer's [section 534(c)] statement is due will not affect the validity of the notification under I.R.C. sec. 534(b)", Sigler wrote, citing *Manson Western Corp. v. Commissioner,* 76 T.C. 1161 (1981). We surmise from this reference that on April 5, 1991, the 90-day period following petitioner's execution of Form 872-T was about to expire. Respondent ordinarily must issue her notice of deficiency prior to the end of that period or the deficiency will be barred by the statute of limitations. We assume for the purposes of this opinion that the notice of deficiency would

have been barred by the statute of limitations if it had not been issued on or before April 5, 1991.

The principal purpose of the 534(b) notification is to allow petitioner to respond by preparing and sending respondent a statement that complies with section 534(c), explaining the grounds for the accumulation. See *Michael DiPeppino, Inc. v. Commissioner,* 83 T.C. 979, 985-986 (1984); H. Rept. 1337, 83d Cong., 1st Sess. 52, A173 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 70-71, 315 (1954). Section 534(c) provides that the taxpayer is to have at least 30 days to submit the section 534(c) statement (534(c) statement), plus such additional time as the Secretary may provide by regulation. The regulations provide 60 days for the taxpayer to respond, and state that a 30-day extension may be granted for good cause shown. Sec. 1.534-2(d)(2), Income Tax Regs.

There were 19 days between the March 28 notification and April 16 clarification. That is less than the 30 days in excess of the statutory minimum period the Secretary has allowed by regulation for submission of 534(c) statements. In addition, respondent granted petitioner's request for a 30-day extension of the 60-day period for submission of a 534(c) statement. Even if it took 10 days for respondent's clarifying letter to reach Artesia, New Mexico, from Austin, Texas, petitioner would have had more than 60 days in which to prepare and submit a 534(c) statement. Petitioner submitted its 534(c) statement on June 25, 1991, 89 days after the initial notification. We therefore conclude that petitioner's ability to prepare and submit a timely 534(c) statement was not prejudiced by respondent's inadvertent failure to state the years in issue on the 534(b) notification.

Nonetheless, we hold that respondent has not complied with the statute because the 534(b) notification does not contain the years to which it pertained. Therefore, respondent must bear the burden of proof on the issue of the reasonableness of the accumulations. There is no statutorily prescribed form for a 534(b) notification, just as section 6212 provides no such form for a notice of deficiency; we believe, however, that similar to a notice of deficiency, the 534(b) notification must satisfy certain functional criteria to meet the requirements of the statute. See *Donley v. Commissioner,* 791 F.2d 383 (5th Cir. 1986), affg. *Abrams v. Commissioner,* 84 T.C. 1308 (1985);

*Benzvi v. Commissioner,* 787 F.2d 1541 (11th Cir. 1986), affg. *Abrams v. Commissioner,* 84 T.C. 1308 (1985); *Foster v. Commissioner,* 80 T.C. 34 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985).

It seems elemental that the 534(b) notification serves the purpose of notifying the taxpayer of a proposed accumulated earnings tax deficiency before the notice of deficiency is mailed. The 534(b) notification also has a direct relationship to the taxpayer's 534(c) statement; without a proper notification, the taxpayer cannot be expected to submit an adequate statement. The 534(b) notification cannot perform these functions unless it states the years for which the notice of deficiency might be issued.

In *Michael DiPeppino, Inc. v. Commissioner, supra,* we held that the 534(b) notification must be sent by registered or certified mail. In that case we read section 534 as a mechanism for protecting taxpayers that should be interpreted in a way that serves that function. We contrasted a notice of deficiency with a 534(b) notification:

[The notice of deficiency] place[s] into motion the mechanism by which the taxpayer may invoke his legal rights. Therefore, once the taxpayer has actual notice, Congress' intent has been satisfied. As discussed *supra,* the manner in which such actual notice is obtained is not critical.

Section 534, on the other hand, was intended to redress abuses that had arisen in the audit process. As stated in the committee reports for both the House Ways and Means Committee and the Senate Finance Committee:

[the] imposition of the burden of proof on the taxpayer has had several undesirable consequences. The poor record of the Government in the litigated cases in this area indicates that deficiencies have been asserted in many cases which were not adequately screened or analyzed. At the same time taxpayers were put to substantial expense and effort in proving that the accumulation was for the reasonable needs of the business. Moreover, the complaints of taxpayers that the tax is used as a threat by revenue agents to induce settlement on other issues appear to have a connection with the burden of proof which the taxpayer is required to assume. It also appears probable that many small taxpayers may have yielded to a proposed deficiency because of the expense and difficulty of litigating their case under the present rules. [H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 52 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 70 (1954).]

The manifest intent of Congress was to ensure that respondent act responsibly in asserting any deficiencies in the accumulated earnings tax by requiring him to carry the burden of proof unless he follows statutorily dictated procedure. [*Michael DiPeppino, Inc. v. Commissioner, supra* at 985-986.]

Although we have analogized the 534(b) notification to the statutory notice of deficiency, we do not say that the standards for these different communications are the same. The respective standards to be applied must be responsive to the different purposes these documents are designed to serve. For instance, a statutory notice must contain the amount of the deficiency as well as the year to which the deficiency pertains, but imposing an amount requirement on a 534(b) notification would undercut rather than enhance the function of the notification. The purpose of the notification is to give the taxpayer the opportunity to provide respondent with sufficient information (through a 534(c) statement) for respondent to determine whether there is a deficiency and what the amount of the deficiency is. Requiring respondent to state an amount in the 534(b) notification would force respondent to make a guess based on incomplete information in a situation where Congress has decided specifically that she should not guess.

Our holding herein does not conflict in any way with the letter or spirit of our holdings in *Manson Western Corp. v. Commissioner, supra,* and *Petrozello Co. v. Commissioner,* T.C. Memo. 1983-250. In those cases we held that respondent may issue a notice of deficiency even shortly after the issuance of the 534(b) notification, at least when the period of limitations is about to expire, because the statute requires only that the 534(b) notification be sent "Before" the notice of deficiency is mailed. Those decisions both deal with the procedures by which the 534(b) notification is mailed, and they both construed the unambiguous language of the statute. In this case we are concerned with the content of the 534(b) notification, a subject on which the statute is silent.

We have considered the argument that the notice of deficiency might also constitute the 534(b) notification in this case, but we conclude that to so hold would do violence to the statute. First, section 534(b) requires that the 534(b) notification be mailed "Before" the notice of deficiency. The statute does not provide for simultaneous mailing. Cf. *Manson Western Corp. v. Commissioner, supra; Petrozello Co. v. Commissioner, supra.* Second, section 534(d) expressly provides that the notice of deficiency will constitute the 534(b) notification when a jeopardy assessment is made before the mailing of the notice of deficiency. The section 534(d) exception applies only when

there is a jeopardy assessment. In other circumstances, such as those in this case, the notice of deficiency must be sent in a separate, subsequent mailing.

It is possible, perhaps even likely, that petitioner had actual notice of the years in issue despite their absence from the 534(b) notification. Moreover, it is clear that petitioner was not prejudiced by the omission, except insofar as petitioner may have incurred additional legal expense to obtain clarification of the years respondent had in mind when she mailed the purported notification. In *Michael DiPeppino, Inc. v. Commissioner, supra,* however, we held for the taxpayer even though the taxpayer received actual notice. If we were to hold that actual notice or lack of prejudice can cure an otherwise inadequate 534(b) notification, we would be required to make a factual inquiry in every case. This is an instance in which we conclude that the clear benefits of a prophylactic rule outweigh the illusory advantages of a flexible standard.

*An appropriate order will be issued.*